UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABDRREZA AKHAVAN TAFTY,

    Plaintiff,                                                 Civil Action No. 11-CV-14628

vs.                                                               HON. BERNARD A. FRIEDMAN

CVS PHARMACY,

    Defendant.
_____/

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is presently before the Court on defendant's motion for summary judgment [docket entry 14]. Plaintiff has filed a response in opposition and defendant has filed a reply. Pursuant to E.D. Mich. LR 7.1(f)(2), the court shall decide this motion without oral argument.

This is an employment discrimination action. Plaintiff, who worked for defendant as a "lead pharmacy technician" until January 2010, alleges that defendant discriminated against him based on his national origin (Persian) and retaliated against him when he complained to higher management about his supervisor's mistreatment of him. Specifically plaintiff alleges that his supervisor, Dalia Omais, "a female of Arabic decent," treated him poorly, was more critical of his work than any of his previous supervisors had been, and "would curse at Plaintiff in Arabic and call him vulgar names based on his National Origin and religion (Muslim)." Compl. ¶¶ 16-24. Plaintiff further alleges that he complained to Omais' supervisor, Sarita Saade-Harfouch, that "Omais "treated him like an animal and reported the vulgar comments, but that no corrective action was taken, Omais' treatment of him worsened, and plaintiff was eventually discharged. *Id.* ¶¶ 26-36. Plaintiff asserts claims for national origin discrimination (Count I) and retaliation (Count II) under

Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws §§ 37.2101, *et seq*. For relief he seeks damages, costs and attorney fees.

Defendant seeks summary judgment on both counts, arguing that plaintiff has failed to state a prima facie case of national origin discrimination (based either on his termination from employment or the allegedly hostile work environment) or retaliation, and that defendant had legitimate, nondiscriminatory reasons for discharging plaintiff, namely, his failure to meet his supervisor's expectations regarding work performance. Plaintiff argues that he has stated a prima facie case of national origin discrimination and retaliation and that the facts are disputed as to whether the reasons offered for his termination are legitimate or pretextual.

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* dispute as to any *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Viewing the evidence in the light most favorable to the opposing party, summary judgment may be granted only if the evidence is so one-sided that a reasonable fact-finder could not find for the opposing party. *See Anderson,* 477 U.S. at 248-50; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-80 (6th Cir. 1989). In other words, "[a] material issue of fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party." *Vollrath v. Georgia-Pacific Corp.*, 899 F.2d 533, 534 (6th Cir. 1990).

The ELCRA prohibits employers from "discharg[ing] or otherwise discriminat[ing]

against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." Mich. Comp. Laws § 37.2202(1)(a). The statute also prohibits any person, including an employer, from "[r]etaliat[ing] or discriminat[ing] against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." Mich. Comp. Laws § 37.2701(a).

*Plaintiff's Wrongful Discharge Claim*

The legal standards governing plaintiff's claim that he was discharged based on his national origin have been articulated as follows:

> . . . Under ELCRA, a plaintiff may prove discriminatory treatment by presenting direct evidence or by presenting indirect or circumstantial evidence. *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 469 Mich. 124, 666 N.W.2d 186, 192 (2003). . . .
>
> **1. Direct evidence**
> Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Sniecinski*, 666 N.W.2d at 192 (quoting *Hazle v. Ford Motor Co.*, 464 Mich. 456, 628 N.W.2d 515 (2001)) (internal quotations omitted). It shows that the person who made the challenged decision, or was otherwise meaningfully involved in that decision, had a bias or that bias affected the challenged decision. *Nemet v. First Nat'l Bank of Ohio*, No. 98-4076, 1999 WL 1111584, *4 (6th Cir. Nov. 22, 1999).
>
> \* \* \*
>
> . . . Statements made by an immediate supervisor and decision maker, that specifically and derogatorily reference an employee's national origin and that are in a close temporal proximity to the termination decision, present sufficient evidence of causation. *Id.*

3

[*DiCarlo v. Potter*, 358 F.3d 408, 417 (6th Cir.2004)] at 417. Conversely, a weaker temporal proximity requires a greater quantum of evidence than in cases with a tighter time line of events. *See id.* (distinguishing *Hein v. All Am. Plywood, Co.*, 232 F.3d 482 (6th Cir.2000)).

\* \* \*

. . . To prove an allegation of discrimination utilizing indirect or circumstantial evidence, a plaintiff must proceed under the evidentiary framework promulgated in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Sniecinski*, 666 N.W.2d at 193. To establish discrimination under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination. 411 U.S. at 802. The burden then shifts to the defendant to provide a legitimate nondiscriminatory reason for the adverse employment action. *Id.* Once the defendant has met this burden, the plaintiff is then afforded the opportunity to prove that the defendant's stated reason is a pretext for unlawful discrimination. *Id.* at 804.

### a. *Prima facie case*

To establish a prima facie case of discrimination under ELCRA, a plaintiff must prove four things: "(1) [he] belonged to a protected class, (2) [he] suffered an adverse employment action, (3) [he] was qualified for the position, and (4) [the adverse employment action] occurred under circumstances giving rise to an inference of unlawful discrimination." *Sniecinski*, 666 N.W.2d at 193 (citing *Hazle*, 464 Mich. 456, 628 N.W.2d 515; *Lytle v. Malady*, 458 Mich. 153, 579 N.W.2d 906, 916 (1998)); *see also Town v. Mich. Bell. Tel. Co.*, 455 Mich. 688, 568 N.W.2d 64, 68 (1997).

\* \* \*

. . . Circumstances give rise to an inference of discrimination if the employee "was treated differently than persons of a different class for the same or similar conduct." *Singal v. Gen'l Motors Corp.*, 179 Mich.App. 497, 447 N.W.2d 152, 156 (1989); *see also Quiros v. Kalitta Flying Service, Inc.*, No. 229229, 2003 WL 21279591, \*6 (Mich.Ct.App. June 3, 2003) (per curiam). In other words, the plaintiff must show that "he was treated less favorably than a similarly situated individual outside his protected class." *Howard v. Family Indep. Agency*, No. 243973, 2004 WL 243375, \*4 (Mich.Ct.App. Feb. 10, 2004) (per curiam). "Employees are similarly

4

> situated if all of the relevant aspects of their employment situations are nearly identical." *Howard*, 2004 WL 243375 at *4 (citing *Town*, 568 N.W.2d at 70.)
>
> \* \* \*
>
> Alternatively, a plaintiff can demonstrate that the circumstances give rise to an inference of discrimination if "the person who terminated him was predisposed to discriminate against persons in the affected class and had actually acted on that disposition in discharging him." *Singal v. Gen'l Motors Corp.*, 179 Mich.App. 497, 447 N.W.2d 152, 156 (1989), *see also Harrison*, 572 N.W.2d at 682 n.6.

*Hussain v. Highgate Hotels, Inc.*, 126 F.App'x 256, 262-65 (6th Cir. 2005).

With these standards in mind, the Court concludes that plaintiff has failed to state a prima facie case regarding his claim that his national origin played a role in defendant's decision to terminate his employment. First, there is no direct evidence of such discrimination. As noted, direct evidence, usually in the form of derogatory comments by a supervisor or decisionmaker, "'requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Hazle v. Ford Motor Co.*, 464 Mich. 456, 462 (2001), *quoting Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). "For example, a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Further, "evidence of discrimination is not considered direct evidence unless a racial motivation is explicitly expressed." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006). The evidence in question must "lead ineluctably to the conclusion" that the unlawful consideration played a role in the decision at issue. *Id.*

In the present case, plaintiff has no such evidence. His argument on this point is that

5

he

> was terminated at the request of his supervisor Omais. (Exhibit G). Omais is a different ethnicity than Plaintiff, is from a different region of the Middle East than Plaintiff, and speaks a different language than Plaintiff. Omais demonstrated her animus towards Plaintiff by engaging in a pattern of behavior toward Plaintiff, the only employee of Persian descent, which was condescending and rude. Specifically, Omais (1) yelled at plaintiff on a regular basis, (2) spoke to outsiders stating that Plaintiff was incompetent or useless, (3) engaged in silent treatment toward Plaintiff after he reported Omais' treatment, and (4) [o]n various occasions used derogatory terms toward Plaintiff, including the Arabic term "kossath."

Pl.'s Br. at 9. None of these points, either together or in isolation, suggests that Omais treated plaintiff badly because of his national origin. All plaintiff has shown is that Omais treated him rudely, not that she did so because plaintiff is Persian. At his deposition, plaintiff testified he "felt" Omais did not like him because he is Iranian, but he acknowledged she never said so and, in fact, that she never said "anything to [plaintiff] that was derogatory towards Persians" and never mentioned plaintiff's Persian origin. Pl.'s Dep. at 56-57, 161-62. While plaintiff testified that Omais cursed him with an Arabic word, which he believes means "fuck your sister," he does not know if it is derogatory towards Persians specifically. *Id.* at 154-55, 161. Plaintiff conceded that he "automatically concluded" Omais' treated him rudely because he is Persian. *Id.* at 180. Clearly, this is not direct evidence of discriminatory animus because Omais never, as plaintiff has conceded, "explicitly expressed" any anti-Persian bias, nor did she ever say or do anything that "lead[s] ineluctably to the conclusion" that she was motivated by any such bias. *Amini*, 440 F.3d at 359.

Lacking direct evidence of discrimination, plaintiff must produce circumstantial evidence showing that he was discharged "under circumstances giving rise to an inference of

6

unlawful discrimination." *Hazle*, 464 Mich. at 463.[1] As noted above, plaintiff generally must meet this burden by showing that similarly situated employees outside of the protected class were treated more favorably. Plaintiff

> "need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated;'" rather, the plaintiff and the employee with whom the plaintiff seeks to compare herself "must be similar in 'all of the relevant aspects.'" 154 F.3d 344, 352 (6th Cir.1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994)). This means the plaintiff must "prove that all of the relevant aspects of his employment situation are 'nearly identical' to those of [the non-minority] employees who he alleges were treated more favorably." *Pierce*, 40 F.3d at 802.

*Hatchett v. Health Care and Retirement Corp. of Am.*, 186 F.App'x 543, 548 (6th Cir. 2006).

In the present case, plaintiff has not identified any non-Persian employees who were not discharged under similar circumstances. In fact, plaintiff indicates that "[t]here are no employees that were similarly situated to Plaintiff because no one else is in the same reporting capacity as Plaintiff to Omais." Pl.'s Br. at 12. Therefore, proof establishing the fourth element of the prima facie case of discriminatory termination is absent.

Plaintiff can attempt to establish the fourth element of a prima facie case by pointing

---

[1] For present purposes, the Court assumes that plaintiff has met the first three elements of a prima facie case under the *McDonnell Douglas* framework, i.e., that he belongs to a protected class, that he suffered an adverse employment action, and that he was qualified for the position as lead pharmacy technician. While defendant argues plaintiff "cannot show that he was qualified for the position . . . based on the mountain of record evidence that demonstrates otherwise," Def.'s Summ. J. Br. at 7, the Court may not "rely[] on defendant['s] non-discriminatory reasons for discharging [plaintiff] as grounds for finding [him] not qualified for the position at the prima facie stage." *Kulik v. Med. Imaging Res., Inc.*, 325 F.App'x 413, 414 (6th Cir. 2009). As plaintiff worked for defendant as a lead pharmacy technician for nearly two and one-half years before being discharged, the court assumes at this stage of the case that he was at least minimally qualified for the position.

to other probative evidence suggesting that unlawful discrimination played a role in the discharge decision. Yet plaintiff has produced no such evidence. Here he relies on evidence that relates generally to his hostile work environment claim (i.e., Omais' "ridicule and constant disrespect," Pl.'s Br. at 13), but which does not give rise to any inference that his national origin played any role in defendant's decision to discharge him.

Finally, plaintiff attempts to meet the fourth element of his prima facie case by pointing to the fact that he was replaced by a non-Persian. The same attempt was made and rejected in *Hussain*:

> Lastly, Hussain argues that there is an inference of discrimination because he was replaced with an individual not shown to be a member of his protected classes. One cannot establish a prima facie case of discrimination, however, "merely by providing evidence that a qualified minority candidate was rejected in favor of a qualified nonminority candidate." *Hazle*, 628 N.W.2d at 525. Thus, the mere fact that Hussain was replaced with someone outside his protected classes is insufficient to establish an inference of discrimination.

126 F.App'x at 265.

The Court concludes plaintiff has failed to state a prima facie case that defendant discharged him, even in part, because of his national origin. Even assuming plaintiff had stated a prima facie case, the Court also concludes that he has failed to cast sufficient doubt on defendant's nondiscriminatory explanation for discharging him to defeat defendant's summary judgment motion. As the Sixth Circuit has explained,

> [a]n employee has three ways by which to prove the existence of pretext: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994) (quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir.1993)); *see also Dubey v. Stroh Brewery Co.*, 185 Mich.App. 561,

8

> 462 N.W.2d 758, 760 (1990).
>
>> The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are "factually false." The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff....
>>
>> The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or coverup.
>
> *Manzer*, 29 F.3d at 1084 (internal quotations and citations omitted).
>
>> "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

*Hussain*, 126 F.App'x at 265-66.

In the present case, the evidence shows that Omais orally warned plaintiff about his work performance on September 2, 2009, and that this warning was followed by increasingly detailed written criticism and improvement directives on September 15, October 16 and November 27, 2009. *See* Def.'s Ex. 5A-5D. Some of the issues had to do with plaintiff not preparing the work

9

schedule and workstation assignment board, not understanding the company's new computer system, not answering the telephone, not keeping the pharmacy area clean, not managing inventory correctly, not interacting with customers appropriately, and not completing certain "training modules." *See id.* Plaintiff argues that an issue of fact exists regarding pretext because "[t]he laundry list of deficiencies alleged by Omais, which appear to be the only deficiencies considered in the decision to terminate, were completely fabricated." Pl.'s Br. at 14. For support of this statement, plaintiff cites only ¶ 70 of his affidavit, where he avers that "I watched many employees succeed, be disciplined or demoted, or even fired during my time at CVS, I never saw anyone who was treated like me." This averment does not speak to the truth or falsity of the many deficiencies in plaintiff's performance which Omais noted in the above-referenced, detailed "coaching and counseling" forms, all of which plaintiff signed. At his deposition, where he was questioned about these forms at length (*see* Pl.'s Dep. at 86-170), plaintiff had no recollection about many of these performance issues (e.g., greeting customers with a smile, completing action notes, answering the telephone, resolving insurance issues, removing trash); and as to some of those he did recall, plaintiff simply disagreed with Omais as to how the tasks should be performed (e.g., scheduling, work assignment board, inventory). Regarding the three training modules Omais directed plaintiff to complete, plaintiff could recall only completing one, but he could not recall which one. *See id.* at 108, 137-39.

On this record, there is no genuine issue as to whether defendant's proffered reason for discharging plaintiff (i.e., poor performance) was a pretext for discrimination. There is no evidentiary basis for a reasonable jury to find that the proffered reason is false, as plaintiff asserts. Even if plaintiff could show that one or more of the items listed by Omais is false, he has presented

no evidence from which a jury could find that anti-Persian discrimination "was the real reason." *Hicks*, 509 U.S. at 515.

For these reasons, the Court concludes that plaintiff has neither stated a prima facie case of national origin discrimination nor shown that defendant's proffered reason for discharging him was pretextual. The Court shall therefore grant summary judgment for defendant on this claim.

*Plaintiff's Hostile Work Environment Claim*

The legal standards governing plaintiff's claim that he was subjected to a hostile work environment based on his national origin have been articulated as follows:

> . . . To establish a hostile work environment under ELCRA, a plaintiff must show five things: (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of his protected status; (3) such conduct or communication was unwelcome; (4) the unwelcome conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior. *See Chambers v. Trettco*, Inc., 463 Mich. 297, 614 N.W.2d 910, 915 (2000). . . .
>
> 1. *Intimidating, hostile, or offensive work environment*
> . . . "[W]hether a hostile work environment existed shall be determined by whether a reasonable person, in the totality of the circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive environment." *Radtke v. Everett*, 442 Mich. 368, 501 N.W.2d 155, 167 (1993). A single incident of harassment is generally not sufficient to create a hostile work environment. *Id.* at 168. Rather, a court should look at all of the circumstances "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark County Sch., Dist. v. Breeden*, 532 U.S. 268, 270-271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (internal quotations

> omitted) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 787-788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not rise to that level. *Faragher*, 524 U.S. at 788, *quoted in Clark County Sch. Dist.*, 532 U.S. at 271.
>
> \* \* \*
>
> . . . For an employer to be liable on an employee's hostile environment claim, the employee must show "that the employer failed to take prompt and adequate remedial action upon notice of the creation of a hostile work environment." *Chambers*, 614 N.W.2d at 916. . . . Notice of the hostile environment "is adequate if, by an objective standard, the totality of the circumstances were such that a reasonable employer would have been aware of a substantial probability that . . . harassment was occurring." *Id.* at 919. Furthermore, an employer is not strictly vicariously liable merely because a supervisor created the hostile environment. *Id*. at 916. The employer must still have notice of the alleged harassment. *Radtke*, 501 N.W.2d at 169. This notice "can be shown by evidence that a complaint was made to a higher management or that the employer should have known about the harassment because of its pervasiveness." *Jager v. Nationwide Truck Brokers, Inc.*, 252 Mich.App. 464, 652 N.W.2d 503, 510 (2001) (citing *Sheridan v. Forest Hills Public Schools* 247 Mich.App. 611, 637 N.W.2d 536 (2001); *Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 776-777 (6th Cir., 1996)) "The bottom line is that, in cases involving a hostile work environment claim, a plaintiff must show some fault on the part of the employer." *Chambers*, 614 N.W.2d at 916.

*Hussain*, 126 F.App'x at 267-69 (footnote omitted).

Plaintiff bases his hostile work environment claim on his allegations that Omais "blatantly treated Plaintiff less favorably than his co-workers who were not of Persian origin," that Omais "was disrespectful toward Plaintiff" and "would curse at Plaintiff in Arabic and call him vulgar names based on his National Origin and religion (Muslim)," that he "was subject to offensive communication, including ethnic slurs, [and] . . . unfair scrutiny and unwarranted discipline . . . because of his national origin." Compl. ¶¶ 22-24, 47-48.

Plaintiff has failed to state a claim for hostile work environment because he has produced no evidence to support the second and fifth elements. Even assuming the other elements have been established, there is no evidence that Omais' communication or conduct toward plaintiff had anything to do with his national origin. Plaintiff testified that Omais yelled at him, treated him "like a servant, animal monster . . . very, very badly," criticized his work unfairly, on one day "called me kossath," sometimes would not talk to him, and generally treated him rudely. *See* Pl.'s Dep. at 150*,* 154, 163, 171-74. Nonetheless, plaintiff acknowledges that Omais never mentioned his national origin, never made any derogatory comments regarding his national origin, that the curse word is Arabic and plaintiff does not know if it is specifically derogatory toward Persians, and that he simply assumed Omais mistreated him because of his national origin. *See id.* at 161-62, 180. In short, there is no evidence linking plaintiff's national origin with Omais' treatment or communications towards him.

Nor has plaintiff offered any evidence to establish the respondeat superior element of this claim. Plaintiff concedes he never complained to higher management that he believed Omais was discriminating against him because of his national origin. Plaintiff testified that his only effort to put higher management on notice was to contact Omais' supervisor, Sarita Saade-Harfouch*,* first by leaving a voicemail message and later by speaking with her in person. The voicemail message was that Omais was "treating me like a servant, animal, monster, those things . . . very, very badly." *See id.* at 150. Sometime later, apparently in November 2009, plaintiff told Saade-Harfouch in person that Omais called him "kossath" and was treating him badly, but plaintiff never told her he believed Omais was discriminating against him because of his national origin or religion. *See id.* at 153-54, 163-65. Under these circumstances, no reasonable juror could

13

find that defendant objectively should "have been aware of a substantial probability that [national origin] harassment was occurring." *Chambers,* 463 Mich. at 319.

The Court concludes that plaintiff's hostile work environment claim fails because he has produced no evidence showing that he "was subjected to communication or conduct on the basis of" his national origin or that defendant was on notice that plaintiff was being mistreated because of his national origin. The Court shall therefore grant summary judgment for defendant on this claim.

*Plaintiff's Retaliation Claim*

The legal standards governing plaintiff's claim that he was discharged in retaliation for complaining about his supervisor's treatment of him have been articulated as follows:

> . . . The ELCRA prohibits an employer from retaliating against an employee who opposes a violation of the Act or makes a charge, files a complaint, or participates in an investigation under the Act. *See* Mich. Comp. Laws § 37.2701(a). In order to establish a *prima facie* case of retaliation under the ELCRA, plaintiff must establish: "(1) that [he] engaged in a protected activity; (2) that this was known to the defendant; (3) that the defendant took an employment action adverse to [him]; and (4) that there was a causal connection between the protected and the adverse employment action." *Barrett v. Kirtland Community College*, 245 Mich.App. 306, 315, 628 N.W.2d 63 (Ct.App.2001).
>
> . . . "[A]n employee need not specifically cite the [ELCRA] when making a charge under the act." *Id*. at 319, 628 N.W.2d 63. However, "the employee must do more than generally assert unfair treatment[,] . . . [he] must clearly convey to an objective employer that the employee is raising the specter of a claim of unlawful discrimination ...." *Id*.
>
> \*   \*   \*
>
> . . . To establish a causal connection, plaintiff must show that

14

>his participation in an activity protected by the ELCRA was a "significant factor" in the employer's adverse employment action, not just that there was a causal link between the two. *See Barrett*, 245 Mich.App. at 315, 628 N.W.2d 63. "[P]roof of temporal proximity, between the protected activity and the adverse employment action, without more, is not sufficient to support a finding of a causal connection." *Reisinger v. Ann Arbor Nights, Inc.*, No. 07–cv–13208, 2008 WL 5062888, at *10, 2008 U.S. Dist. LEXIS 10735, at *31 (E.D. Mich. Nov. 25, 2008). . . .
>
>Third, if a plaintiff establishes a prima facie case, the burden shifting analysis under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies and a defendant may rebut the plaintiff's prima facie case by articulating a "legitimate, non-discriminatory reason" for the adverse employment action. *See Morris v. Oldham County Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir.2000); *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir.1998) (When a plaintiff establishes a prima facie case, "a mandatory presumption of discrimination is created and the burden shifts to the employer to proffer a non-discriminatory reason for" the adverse employment action).

*Stevens v. Estes Express Lines*, 833 F. Supp. 2d 729, 735-37 (E.D. Mich. 2011) (footnote omitted).

This claim is based on plaintiff's allegation that he "engaged in a protected activity when he complained about the national origin discrimination by his immediate supervisor, and reported her conduct to upper management [and] . . . [a] causal connection exists between Plaintiff's protected activity and Plaintiff's discipline and subsequent termination." Compl. ¶¶ 55, 58.

This claim fails because plaintiff has not produced evidence supporting the first, second and fourth elements. Plaintiff testified at his deposition that he never complained to higher management that Omais was discriminating against him because of his national origin. In his only contacts with higher management – the voicemail message and the in-person meeting with Saade-Harfouch – plaintiff never indicated or even hinted that his national origin had anything whatsoever to do with Omais' treatment of him. In short, plaintiff never "clearly convey[ed] . . . that [he was]

15

raising the specter of a claim of unlawful discrimination." *Barrett,* 245 Mich. App. at 319.  This simple fact makes it impossible for plaintiff to show that he engaged in protected activity, that defendant was aware of protected activity, or that a causal connection exists between the protected activity and any adverse employment action.  Plaintiff correctly notes that he was not required to use "the magic words 'national origin discrimination.'" Pl.'s Br. at 19.  Nonetheless, he was required to

"do more than generally assert unfair treatment." *Barrett,* 245 Mich. App. at 319.

For these reasons, the Court concludes that plaintiff has failed to state a claim for retaliation under the ELCRA.  The Court shall grant summary judgment for defendant on this claim.

*Conclusion*

For the reasons stated above, the Court finds that plaintiff has failed to state a claim under the ELCRA for discriminatory discharge based on his national origin, hostile work environment based on his national origin, or retaliation for engaging in protected activity. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is granted.

                                            S/ Bernard A. Friedman
Dated: November 20, 2012          BERNARD A. FRIEDMAN
     Detroit, Michigan            SENIOR UNITED STATES DISTRICT JUDGE